FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JAN 19 2011

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RWS

| | |
|---|---|
| MARCUS G. KEEGAN, )<br>    Plaintiff )<br>)<br>v. )<br>)<br>THE BRACHFELD LAW GROUP, )<br>A PROFESSIONAL )<br>CORPORATION, )<br>)<br>    Defendant. ) | Civil Action File No. **1:11-CV-0153**<br><br>**JURY TRIAL DEMAND** |

## COMPLAINT

COMES NOW Plaintiff Marcus G. Keegan ("Plaintiff") and, for his Complaint against The Brachfeld Law Group ("Defendant"), shows as follows:

### JURISDICTION

1. Plaintiff is a natural person with his personal residence located in the State of Georgia, County of DeKalb.

2. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692(a)(3).

3. Defendant The Brachfeld Law Group is a professional corporation doing business in Georgia.

4. Defendant may be served through its registered agent for service of process, Corporation Service Company which will do business in California as CSC – Lawyer

Incorporating Service at 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833.

5. Defendant is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

6. Venue and jurisdiction are proper as a substantial part of the events or omissions relevant to this action took place in the Northern District of Georgia.

7. Beginning in or around September 2009, Defendant began placing phone calls to Plaintiff at Plaintiff's home telephone number.

8. Recognizing Defendant as a debt collector, and knowing he had no debts that would have been submitted for collection, Plaintiff repeatedly ignored Defendant's calls.

9. Out of sheer frustration at Defendant's repeated calls to his home, Plaintiff answered one of Defendant's calls sometime in the fall of 2009.

10. Upon answering the fall 2009 phone call Plaintiff learned that Defendant was looking for someone with the last name of either Riker or Striker.

11. Sometime during the fall of 2009 Plaintiff explained to an employee of Defendant that he was not the person Defendant sought and that no one with either the last name of Riker or Striker had ever lived at the location to which the phone number was currently associated.

12. Defendant's employee apologized and stated that Plaintiff's phone number would be removed from Defendant's records.

13. Several weeks later, however, Defendant once again began calling Plaintiff's home phone number.

14. Defendant called Plaintiff's home phone number numerous times from November 2009 through January 2010 using an automatic telephone dialing system.

15. On several occasions Plaintiff answered the phone and was placed on an automated system that kept him on hold until it eventually hung up, never allowing Plaintiff to explain that Defendant was contacting the wrong person.

16. On one or more occasions, Plaintiff answered the phone and was taken to an automated system that asked him to push one if he was Mr. Riker or Striker and to push two if he was not.

17. After pushing two, Plaintiff was placed in an automated loop that never allowed him to speak to anyone to explain the problem that was occurring with Defendant contacting him at his home phone number.

18. Often, Plaintiff tried to simply ignore Defendant's repeated phone calls if the caller identification on his phone showed that it was the Defendant calling.

19. On February 12, 2010, Defendant once again called Plaintiff's home phone number.

20.     Once again, out of sheer frustration, Plaintiff decided to answer Defendant's phone call.

21.     Defendant once again asked to speak with an individual with the last name of either Riker or Striker.

22.     At this time, Plaintiff told Defendant's employee that he was aware that she was calling from a debt collection law firm and that she was in violation of the Fair Debt Collection Practices Act as he had previously requested that Defendant not contact him because they had the wrong debtor.

23.     Plaintiff also told Defendant's employee once again to cease calling Plaintiff's home phone number and to remove Plaintiff's information from their files identifying his number as one belonging to the debtor that Defendant was seeking.

24.     Rather than agreeing to remove Plaintiff's phone number, Defendant's employee became argumentative and insisted that Plaintiff must be the person she was looking for.

25.     Plaintiff once again told Defendant's employee that she was violating the FDCPA, and to cease calling.

26.     Plaintiff then hung up the phone.

27.     Defendant's employee immediately called Plaintiff back and, *inter alia*, asked Plaintiff if he was "ready to grow up and deal with his problems like an adult."

28. Plaintiff informed Defendant's employee again that she was violating the FDCPA and asked her not to call him again.

29. Plaintiff also repeatedly asked Defendant's employee to give him her name, which she refused to do.

30. Defendant's employee continued to insist that Plaintiff either owed the debt at issue or knew the person she was seeking, asking, "how else could we have gotten your number if you're not really him?"

31. Ultimately, Defendant's employee hung up the phone after Plaintiff's repeated insistence that she identify herself.

32. Following the February 12th phone calls, Defendant contacted Plaintiff again on February 20th, 22nd, 27th, and 28th.

33. Defendant was told not to contact Plaintiff on at least one other phone call during the month of February.

34. As in the calls Plaintiff received prior to February 2010, on two or three occasions during February 2010, Plaintiff answered the phone and was placed on an automated system that kept him on hold until it eventually hung up, never allowing Plaintiff to explain that Defendant was contacting the wrong person.

35. Defendant violated the Fair Debt Collection Practices Act by continually making abusive and harassing phone calls to Plaintiff at his home to attempt to collect a debt he did not owe.

36. Defendant violated the Telephone Consumer Protection Act by making repeated calls to Plaintiff using a artificial or prerecorded voice to deliver a message without the prior consent of Plaintiff.

## COUNT I: FDCPA – HARASSMENT OR ABUSE

37. Plaintiff incorporates herein by reference the preceding paragraphs of the complaint.

38. The Fair Debt Collection Practices Act ("FDCPA") imposes specific obligations upon debt collectors to, *inter alia*, not engage in abusive and harassing behavior in the collection of a debt.

39. 15 U.S.C. 1692d(5) specifically prohibits debt collectors from "(c)ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

40. Brachfeld Law Group engaged in abusive and harassing behavior by repeatedly calling Plaintiff in an attempt to collect a debt belonging to someone else despite being told that Plaintiff was not the owner of the debt.

41. Brachfeld Law Group engaged in abusive and harassing behavior by telling Plaintiff he needed to "grow up and deal with his problems like an adult" in an effort to try to force him to pay a debt that he does not owe.

42. Brachfeld Law Group engaged in abusive and harassing behavior by repeatedly calling Plaintiff following his insistence that he was the wrong person in an attempt to collect a debt that he did not owe.

43. Brachfeld Law Group engaged in abusive and harassing behavior by repeatedly calling Plaintiff and placing him on an autodial loop that would not allow him to speak with a person to whom he could explain that Defendant was contacting the wrong person regarding the alleged debt.

44. As a result of Brachfeld Law Group's violation of the FDCPA, Plaintiff is entitled to statutory relief and actual damages.

## COUNT II: VIOLATION OF THE TELEPHONE COSUMER PROTECTION ACT

45. Plaintiff incorporates herein by reference the preceding paragraphs of the complaint.

46. 47 U.S.C.A. § 227b(1)(B) prohibits any person from initiating any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party.

47.     47 U.S.C.A. § 227b(3) allows for an action to recover $500.00 in damages for each violation.

48.     Defendant made repeated calls to Plaintiff using an artificial or prerecorded voice to deliver a message without the prior consent of Plaintiff, violating the Telephone Consumer Protection Act.

49.     47 U.S.C.A. § 227b(3) provides that if the Court finds that the Defendant willfully and knowingly violated the Telephone Consumer Protection Act, the Court may increase the amount of the award to an amount equal to not more than 3 times the damages allowed for in Paragraph 46 above.

50.     Defendant willfully and knowingly made these calls in violation of the Telephone Consumer Protection Act.

Wherefore, Plaintiff prays for the following relief:

(a) That the Court enter judgment in favor of the Plaintiff and against Defendant in an amount to be determined at trial, including statutory damages, actual damages, punitive damages, as well as, attorney's fees, expenses and costs; and,

(b) That Plaintiff have such other and further relief as this Court deems just and proper.

## PLAINTIFF DEMANDS A JURY TRIAL OF ALL CAUSES OF ACTION

Respectfully submitted, this 18th day of January, 2011.

                              SEDKI & DUNN, LLC

                              By: _____
                                   Alec N. Sedki
                                   Georgia Bar No. 634080
                                   Michael A. Dunn
                                   Georgia Bar No. 140992

3399 Peachtree Road
Suite 400
Atlanta, Georgia 30326
404-995-0080
(fax) 770-751-5141